# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **MARIA RAMIREZ and PEDRO RAMIREZ**, *as Representatives of the Estate and Statutory Death Beneficiaries of* **DANIEL ANTONIO RAMIREZ,** | §<br>§<br>§<br>§<br>§ | |
| *Plaintiffs,* | §<br>§ | EP-17-CV-00193-DCG |
| v. | §<br>§ | |
| **RUBEN ESCAJEDA, JR. and CITY OF EL PASO, TEXAS,** | §<br>§<br>§ | |
| *Defendants.* | §<br>§ | |

## ORDER

Presently before the Court are Defendant City of El Paso, Texas's (the "City of El Paso") "Rule 12 Motion to Dismiss Plaintiffs' Original Complaint" ("El Paso Motion") (ECF No. 8) filed on August 1, 2017, and Defendant Ruben Escajeda, Jr.'s ("Officer Escajeda") "Motion to Dismiss Plaintiffs' Original Complaint" ("Escajeda Motion") (ECF No. 14) filed on August 16, 2017. For the reasons that follow, the Court **DENIES** the City of El Paso's Motion and Officer Escajeda's Motion.

## I. BACKGROUND[1]

This case arises from the circumstances surrounding the death of Daniel Antonio Ramirez ("Mr. Ramirez"). Plaintiffs are the parents of Mr. Ramirez. Compl. at 1. Officer Escajeda was employed as a police officer by the City of El Paso Police Department ("EPPD") at the time of Mr. Ramirez's death. *Id.* at 2. On June 23, 2015, Mr. Ramirez's mother, Maria Ramirez, called

---

[1] The following facts are derived from Plaintiffs' Complaint. *See* Compl. at 2–20, ECF No. 1. When reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *See Gines v. D.R. Horton, Inc.*, 699 F.3d 812, 816 (5th Cir. 2012).

911 to report that her son was threatening to hang himself and needed help. *Id.* Officer Escajeda was the first officer to respond to the call. *Id.* After arriving at the house, Officer Escajeda proceeded to the backyard to look for Mr. Ramirez. *Id.* at 3.

After entering the backyard, Plaintiffs allege that Officer Escajeda saw that Mr. Ramirez was in the process of hanging himself from a basketball net. *Id.* Further, Plaintiffs assert that Officer Escajeda saw Mr. Ramirez grabbing the rope with both hands and touching the ground with his tiptoes to try and save his own life. *Id.* After seeing Mr. Ramirez struggling to save himself, Plaintiffs contend that Officer Escajeda deployed his taser on him, striking him in the chest and abdomen, which caused his body to go limp. *Id.* After deploying the taser and watching Mr. Ramirez's body go limp, Plaintiffs aver that Officer Escajeda finally removed him from the noose. *Id.*

By the time Officer Escajeda removed Mr. Ramirez from the noose, other officers had arrived, and cardiopulmonary resuscitation was conducted to no avail. *Id.* Subsequently, Mr. Ramirez was transported to Del Sol Medical Center where efforts to resuscitate him continued, but he was eventually pronounced deceased. *Id.* On June 22, 2017, Plaintiffs filed a complaint before this Court alleging that Officer Escajeda and the City of El Paso are liable for the deprivation of Mr. Ramirez's constitutional rights. *Id.* at 18–20. By their complaint, Plaintiffs allege that Officer Escajeda used excessive force against Mr. Ramirez and further make six distinct allegations asserting that the City of El Paso was "directly responsible" for Officer Escajeda's alleged misconduct by:

> A) maintaining a policy or custom of excessive force by officers that is so common and widespread as to constitute a custom that fairly represents municipal policy;

B) maintaining a policy or custom of excessive force by officers when the officer is on notice of a victim's mental health problems that is so common and widespread as to constitute a custom that fairly represents municipal policy;

C) failing to properly train, supervise, or discipline members of the [EPPD], including Defendant Escajeda, not to use intermediate force, such as a taser, against an individual who does not pose a threat to the officer or others and does not display active aggression or defensive resistance;

D) failing to properly train, supervise, or discipline members of the [EPPD], including Defendant Escajeda, on mental health issues and how to properly assess the situation and take action to de-escalate the situation and bring the crisis to a non-violent conclusion where their officers have notice and knowledge that the person for whom they are called has mental health issues;

E) failing to institute proper procedures to ensure that EPPD officers use appropriate de-escalation tactics so as to bring the crisis to a non-violent conclusion in situations in which it is known that an unarmed resident has mental health issues; and

F) failing to pursue criminal or disciplinary charges or support criminal or disciplinary action against officers, including Escajeda, who have deprived citizens and residents of El Paso of their constitutional rights.

*Id.* Conversely, both Officer Escajeda and the City of El Paso filed Motions to Dismiss alleging that Plaintiffs' complaint fails to state a claim upon which relief can be granted. Escajeda Mot. at 8; El Paso Mot. at 21–22.

## II. STANDARD

As a threshold matter, the Court notes the tension between the holdings in *Leatherman* and *Iqbal*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that a complaint must include enough factual allegations to state a "plausible" claim for relief); *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993) (holding that plaintiffs need only state "a short and plain statement of the claim showing that the pleader is entitled to relief" and do not need to conform to any sort of "heightened pleading standard . . . in civil rights cases alleging municipal liability"). Courts are split over whether to apply the "short

and plain statement" standard from *Leatherman* or the "facial plausibility" standard from *Iqbal*; some courts have even adopted a hybrid approach. *See Sanchez v. Gomez*, No. EP-17-CV-133-PRM, 2017 WL 4479260, at *3–4 (W.D. Tex. Oct. 6, 2017) (collecting cases and providing a comprehensive discussion of the issue). Out of an abundance of caution, the Court will apply the "facial plausibility" standard from *Iqbal*;[2] nonetheless, the Court notes that using the less-stringent standard from *Leatherman* would not change the outcome here.

Federal Rule of Civil Procedure 12(b)(6) allows a party to seek dismissal of a claim for "failure to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion, a court generally accepts well-pleaded facts as true and construes the complaint in the light most favorable to the plaintiff. *See Gines*, 699 F.3d at 816. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this "facial plausibility" standard, a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court's task, then, is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Doe ex rel. Magee*, 675 F.3d at 854 (citation and internal quotation marks omitted). Moreover, "[m]otions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted."

---

[2] The Fifth Circuit has briefly considered this issue on two occasions and supported applying the *Iqbal* standard. *Speck v. Wiginton*, 606 F. App'x 733, 735–36 (5th Cir. 2015) (*per curiam*) ("Speck first contends that the district court applied a heightened pleading standard for civil rights cases contrary to *Leatherman* . . . But the district court correctly stated that the proper standard was Rule 8 as interpreted by . . . [*Iqbal* ]. It did not purport to apply a higher standard because this case involved civil rights claims."); *Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys*, 675 F.3d 849, 866 n.10 (5th Cir. 2012) (*en banc*) (rejecting the argument that *Leatherman* prevents courts from applying the *Iqbal* standard in municipal liability cases).

*Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks

omitted) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)).

## III.  DISCUSSION

The City of El Paso and Officer Escajeda both move to dismiss Plaintiffs' complaint on

the basis that they failed to state a claim upon which relief may be granted.  El Paso Mot. at 3;

Escajeda Mot. at 2.  By his Motion, Officer Escajeda alleges that the complaint fails to overcome

his qualified immunity.  Escajeda Mot. at 9.  Moreover, the City of El Paso asserts that the

complaint fails to plead facts sufficient to demonstrate municipal liability.  El Paso Mot. at 22.

The Court will first analyze Plaintiffs' claims against the City of El Paso before turning to their

claims against Officer Escajeda.

### A.  Plaintiffs' Claims against the City of El Paso

Plaintiffs assert six specific failures on the part of the City of El Paso that allegedly

caused the deprivation of Mr. Ramirez's civil rights.  Compl. at 18–19.  These six failures can be

distilled down to four distinct customs or policies, which are the City of El Paso's failure to

discipline officers who used excessive force against mentally ill persons, the City of El Paso's

failure to train officers on how to handle mentally ill persons in crisis, the City of El Paso's

failure to institute proper procedures for deescalating officer encounters with mentally ill persons

in crisis, and the City of El Paso's custom of using excessive force against mentally ill persons.

*Id.* The Court will analyze each of these claims in turn.

However, first, the Court will analyze the grounds upon which Plaintiffs' claims against

the City of El Paso rest.  Plaintiffs sue under 42 U.S.C. § 1983.[3]  *Id.* at 1.  By its text, § 1983

---

[3] 42 U.S.C. § 1983 [hereinafter § 1983] states:
  Every person who, under color of any statute, ordinance, regulation, custom, or usage, of
  any State or Territory or the District of Columbia, subjects, or causes to be subjected, any
  citizen of the United States or other person within the jurisdiction thereof to the

provides redress to persons who have suffered a deprivation of their constitutional rights at the hands of a government official. 42 U.S.C. § 1983. *Monell v. Department of Social Services of the City of New York* recognized a right of action against a municipality that deprived a person of his constitutional rights. 436 U.S. 658, 690–91 (1978) ("Our analysis of the legislative history of the Civil Rights Act of 1871 compels the conclusion that Congress *did* intend municipalities and other local government units to be included among those persons to whom § 1983 applies. Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."). Nonetheless, *Monell* also held that "a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Id.* at 691. *See also Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986) ("The 'official policy' requirement was intended to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible."). Therefore, in order to establish liability under *Monell*, a plaintiff must prove: "(1) an official policy (or custom), of which (2) a policy maker can be charged with actual or constructive knowledge, and (3) a constitutional violation whose 'moving force' is that policy (or custom)." *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *Piotrowski v. City of Houston,* 237 F.3d 567, 578 (5th Cir. 2001)).

With regard to the first prong, an official policy generally takes one of two forms:

---

deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or

2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy.

*Burge v. St. Tammany Par.*, 336 F.3d 363, 369 (5th Cir. 2003) (internal quotation marks omitted) (quoting *Bennett v. City of Slidell*, 735 F.2d 861, 862 (5th Cir. 1984) (*per curiam*)). Further, "[a] claim of a violation of section 1983 pursuant to . . . a persistent, widespread practice of city officials or employers . . . may in an appropriate case also encompass allegations that a policymaker failed to act affirmatively, including a failure adequately to train a subordinate." *Id.* However, in order for a custom or practice to be considered a de facto policy, a plaintiff must allege facts "showing a pattern of abuses that transcends the error made in a single case." *Piotrowski*, 237 F.3d at 582; *Lozano v. Ortega*, No. EP-14-CV-239-KC, 2014 WL 6611595, at *15 (W.D. Tex. Nov. 19, 2014).

Regarding the second prong, in order to hold a municipality liable, "actual or constructive knowledge of a custom must be attributable to the governing body or officials to whom that body has delegated policy-making authority." *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (*en banc*) (internal quotation marks omitted). "A municipal policymaker is someone who has the responsibility for making law or setting policy in any given area of a local government's business." *Valle v. City of Houston*, 613 F.3d 536, 542 (5th Cir. 2010) (internal quotation marks omitted) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 125 (1988)). Thus, municipal liability only attaches where "the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." *Id.* (internal quotation marks omitted) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)). "Whether an official possesses final

policymaking authority for purposes of municipal liability is a question of state and local law." *Id.*

As to the third and final prong, a plaintiff is required to demonstrate that the municipality, through its deliberate conduct, was the "moving force" behind the injury alleged. *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). To demonstrate that the municipality was the "moving force," a plaintiff "must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Id.*; *see also Snyder v. Trepagnier*, 142 F.3d 791, 796 (5th Cir. 1998) (explaining "the need for *Monell* plaintiffs to establish both the causal link ('moving force') and the city's degree of culpability ('deliberate indifference' to federally protected rights)"). Moreover, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." *Id.* at 405. The rigorous standard that courts apply is "deliberate indifference." *See id.* at 411 ("A plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision."). "Deliberate indifference is a high standard—a showing of simple or even heightened negligence will not suffice." *Valle*, 613 F.3d at 542 (internal quotation marks omitted) (quoting *Piotrowski*, 237 F.3d at 579). Rather, the Fifth Circuit has explained that in the context of municipal liability, deliberate indifference means that "it is obvious that the likely consequences of not adopting a policy will be a deprivation of constitutional rights." *Rhyne v. Henderson Cty.*, 973 F.2d 386, 392 (5th Cir. 1992).

*1. Failure to Discipline*

Plaintiffs allege that the City of El Paso's custom of failing to discipline its police officers for using excessive force against mentally ill persons caused the deprivation of Mr. Ramirez's constitutional rights. Compl. at 7–8. Specifically, Plaintiffs assert that the City of El Paso's Disciplinary Review Board ("DRB") was comprised of too few civilians to hold officers accountable, that Police Chief Gregory Allen ("Chief Allen") had the authority to reverse or mitigate the DRB's decisions, and that Chief Allen has persisted with his failures to discipline officers who used excessive force against mentally ill persons. *Id.* at 5–7.

First, in order to prove *Monell* liability, Plaintiffs must allege a custom or policy. *See Pineda, supra,* 291 F.3d at 328. Here, Plaintiffs have alleged that the City of El Paso's deficient disciplinary process has created an environment where excessive force against the mentally ill is not punished. Compl. at 5–8. In essence, Plaintiffs argue that the City's custom of not disciplining officers acquiesces to the use of excessive force against the mentally ill. The City of El Paso disputes that this is custom by pointing out that there is no legally-mandated format or makeup required of its DRB. El Paso Mot. at 8. Further, the City of El Paso asserts that Plaintiffs have failed to show a formally-adopted official policy or a pattern sufficient to constitute a "persistent, widespread practice." *Id.* at 5; *Burge, supra,* 336 F.3d at 369. With regard to the DRB, the City of El Paso mischaracterizes Plaintiffs' allegations; Plaintiffs do not demand that the City adhere to a specific type of DRB. Rather, Plaintiffs offer examples of other review boards to highlight the alleged failures of the DRB and seek to have the City of El Paso discipline officers in the future to deter the actions that allegedly caused the death of Mr. Ramirez.

As to the City of El Paso's contention that Plaintiffs have failed to offer a pattern sufficient to establish the "persistent, widespread practice" needed to prove a custom, Plaintiffs offered detailed accounts of eight other instances of the alleged use of excessive force against mentally ill persons from 2013 to 2016 and various statistics indicating that the use of force against the mentally ill is an issue for the City of El Paso.[4] Compl. at 12–16. To establish a pattern, a plaintiff must offer similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 382–83 (5th Cir. 2005). Further, "[a] pattern [ ] requires 'sufficiently numerous prior incidents,' as opposed to 'isolated instances.'"[5] *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 851 (5th Cir. 2009) (quoting *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). In the instant case, Plaintiffs have offered eight similar instances from 2013 to 2016 with specificity and statistics supporting their claims of a custom. This is sufficient to plausibly state a custom that satisfies the first element of the *Monell* claim.

Next, Plaintiffs must identify a policy maker who can be charged with actual or constructive knowledge. *See Pineda, supra*, 291 F.3d at 328. Plaintiffs identify Chief Allen as the policy maker because he has the power to override the DRB's decisions and the final say on

---

[4] Plaintiffs' complaint alleges that from 2012 to 2016, about 57% of persons who died in the EPPD's custody exhibited signs of mental illness. Compl. at 12. Further, in 2015, over 66% of El Paso residents shot and killed by the EPPD exhibited signs of mental illness compared to the national average of only about 26%; in 2016, 100% of El Paso residents shot and killed by EPPD exhibited signs of mental illness compared to the national average of about 25%. *Id.* Moreover, Plaintiffs include detailed descriptions of the circumstances leading to the allegations that the EPPD used excessive force against Daniel Rodrigo Saenz, Fernando Gomez, Erik Salas-Sanchez, David Alejandro Gandara, Eric Wilson, Arthur Williams, Jose Angel Acevedo, and Javier Ortega. *Id.* at 13–16. Plaintiffs allege that each of these eight victims of excessive force were mentally ill persons in crisis at the time of the incidents and that Chief Allen did not discipline the officers involved. *Id.*

[5] For example, 21 incidents over 19 years, "without further context," was insufficient to prove a pattern. *Saenz v. City of El Paso*, 637 F. App'x 828, 832 (5th Cir. 2016) (*per curiam*).

disciplining officers. Compl. at 5–6. The City of El Paso disputes that the DRB is a policy maker but does not dispute that Chief Allen is. El Paso Mot. at 7–10. Plaintiffs charge Chief Allen with knowledge of officer discipline because of his position as the final arbiter in the process and his alleged failures to discipline officers who used excessive force against the mentally ill. Compl. at 5–8. The City of El Paso does not contest this assertion. *See* El Paso Mot. at 7–10. Therefore, Plaintiffs have plausibly stated the second element of a *Monell* claim for failure to discipline.

Finally, Plaintiffs must plausibly allege that the custom is the "moving force" for the constitutional violation. *See Pineda, supra*, 291 F.3d at 328. The City of El Paso asserts that Plaintiffs cannot prove that its failure to discipline officers is the cause of the constitutional violation here. El Paso Mot. at 8–10. Plaintiffs respond that the composition of the DRB and Chief Allen's control over the disciplinary process allowed officers to use excessive force against mentally ill persons without fear of adverse consequences. Pls.' Resp. El Paso Mot. at 9, ECF No. 18. Moreover, Plaintiffs cite to the statistics and the eight similar incidents from 2013 to 2016 to support their allegations that the failure to discipline officers has resulted in El Paso's disproportionately high incidents of excessive force against the mentally ill. *Id.* The City of El Paso argues that because Plaintiffs allege that Officer Escajeda acted unreasonably and violated an official department policy when he used his taser, Officer Escajeda could not have been influenced by any custom or policy. El Paso Mot. at 9–10. However, the City misstates Plaintiffs' allegation; Plaintiffs' allegation is that Officer Escajeda was undeterred from violating Mr. Ramirez's constitutional rights because he did not fear discipline. Indeed, Plaintiffs assert that this allegation is further supported by Chief Allen failing to discipline Officer Escajeda for using his taser on Mr. Ramirez. Compl. at 7. This persistent, widespread practice of not

disciplining officers for using excessive force against mentally ill persons is at the very essence of what Plaintiffs allege resulted in Mr. Ramirez's constitutional deprivation. Therefore, Plaintiffs' factual allegations allow the Court to draw a reasonable inference that the City of El Paso's custom of not disciplining officers caused the excessive force used against Mr. Ramirez.

Further, Plaintiffs contend that the statistics and similar incidents prove that Chief Allen was deliberately indifferent to the risk that his decisions not to discipline officers would result in Mr. Ramirez's constitutional violation. Pls.' Resp. El Paso Mot. at 9. The City of El Paso argues that the factual allegations are insufficient to prove a pattern. El Paso Mot. at 5. The Court previously rejected that argument and does so again here. The previous incidents of excessive force being used against mentally ill persons support a reasonable inference that Chief Allen was on notice that choosing not to discipline his officers would result in the deprivation of Mr. Ramirez's constitutional rights. *See Piotrowski*, 237 F.3d at 581 ("Self-evidently, a City policy of inadequate officer discipline could be unconstitutional if it was pursued with deliberate indifference toward the constitutional rights of citizens."). Therefore, Plaintiffs have plausibly stated all three elements of a *Monell* claim for failure to discipline. Accordingly, the Court DENIES the City of El Paso's Motion to Dismiss Plaintiffs' failure-to-discipline claim.

## 2. *Failure to Train*

Plaintiffs allege that the City of El Paso's failure to train officers on how to handle the mentally ill persons in crisis whom they encounter on the job caused the deprivation of Mr. Ramirez's constitutional rights. Compl. at 8–9. Specifically, Plaintiffs assert that the City of El Paso's failure to train officers on how to respond to crisis intervention calls and how to deescalate encounters with mentally ill persons in crisis caused the constitutional violations in the instant case. *Id.* at 8.

-12-

For a failure-to-train claim, a plaintiff must show that "(1) the municipality's training policy or procedure was inadequate; (2) the inadequate training policy was a 'moving force' in causing violation of the plaintiff's rights; and (3) the municipality was deliberately indifferent in adopting its training policy." *Valle*, 613 F.3d at 544. "The failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *Id.* (internal quotation marks omitted). Further, "[i]n resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *Id.* (internal quotation marks omitted) (quoting *City of Canton v. Harris,* 489 U.S. 378, 390 (1989)).

With regard to the first prong of the failure-to-train claim, Plaintiffs make numerous factual allegations as to why the City of El Paso's training was inadequate, including pointing out the City's failure to train officers on how to respond to crisis intervention calls, the City's failure to train officers on how to de-escalate potential confrontations with mentally ill persons in crisis, and the City's failure to train officers on the steps needed to minimize deadly or intermediate force when confronted with a mentally ill person in crisis. Pls.' Resp. El Paso Mot. at 10. Plaintiffs further assert that Chief Allen determines the scope and content of the training, had direct knowledge of the training failures, and chose not to provide adequate mental health training for his officers despite it being different in substance than standard patrol officer training. *Id.* However, the City of El Paso counters that Plaintiffs' claim must fail because there are no constitutional requirements that its officers be trained on policing standards for mentally ill persons. El Paso Mot. at 10. Nevertheless, Plaintiffs need not show that the City of El Paso's training is unconstitutional; rather, they need only show that the training was inadequate and caused Mr. Ramirez's constitutional deprivation. *See Piotrowski*, 237 F.3d at 579 ("While an

unconstitutional official policy renders a municipality culpable under § 1983, even a facially innocuous policy will support liability if it was promulgated with deliberate indifference to the 'known or obvious consequences' that constitutional violations would result."). Therefore, Plaintiffs have plausibly stated the first element of a *Monell* claim for failure to train.

As to the second and third prongs, the City of El Paso claims that Plaintiffs cannot demonstrate how the officers' training was the "moving force" in causing the alleged deprivation of Ramirez's constitutional rights and that Plaintiffs have failed to provide sufficient factual allegations to prove a pattern for deliberate indifference. El Paso Mot. at 10–11. With regard to the "moving force" element, Plaintiffs offered a number of factual allegations explaining how the failure to offer adequate training escalated the situation and caused Officer Escajeda to allegedly use excessive force. *See* Pls.' Resp. El Paso Mot. at 10–12. These factual allegations taken in conjunction with the statistical evidence and similar incidents raise a reasonable inference that the City of El Paso's inadequate training caused Mr. Ramirez's constitutional violation. Further, the Court has already rejected the City of El Paso's argument that Plaintiffs' eight similar incidents from 2013 to 2016 fail to show a pattern. The previous incidents of excessive force while dealing with mentally ill persons in crisis support a reasonable inference that Chief Allen was on notice that the result of not providing adequate training to his officers would be the deprivation of Mr. Ramirez's constitutional rights. *See Rhyne*, 973 F.2d at 392 ("Consider, for example, a municipality that arms its officers with firearms, knowing to a moral certainty that the armed officers will arrest fleeing felons. The municipality would be deliberately indifferent in failing to train the officers properly in the use of deadly force, because the likelihood of unconstitutional consequences of the municipality's omission is obvious."). Therefore, Plaintiffs

have plausibly stated all three elements of a *Monell* claim for failure to train. Accordingly, the Court DENIES the City of El Paso's Motion to Dismiss Plaintiffs' failure-to-train claim.

### 3. Failure to Institute Proper Procedures

Plaintiffs allege that the City of El Paso's failure to institute proper procedures for officers on how to handle the mentally ill persons in crisis whom they encounter on the job caused the deprivation of Mr. Ramirez's constitutional rights. Compl. at 9–12. Specifically, Plaintiffs contend that the City of El Paso's failure to implement mental health units or crisis intervention teams to make first contact with mentally ill persons in crisis caused the constitutional deprivation in the instant case. *Id.*

First, in order to prove *Monell* liability, Plaintiffs must allege a custom or policy. *See Pineda, supra*, 291 F.3d at 328. Here, Plaintiffs allege a specific policy that the City of El Paso chose not to implement and provide examples of police departments that have implemented said policy, including the cities of Dallas, Houston, Austin, and San Antonio. Compl. at 9–10. Further, Plaintiffs include statistics showing that crisis intervention teams significantly decrease the likelihood of the use of force when dealing with a mentally ill person in crisis.[6] *Id.* The City of El Paso argues that the lack of specific mental health training for officers does not establish a constitutional claim and cites *Casto v. Plaisance*, No. CV 15-817, 2016 WL 2855468, at *10 (E.D. La. May 16, 2016) in support of this notion. El Paso Mot. at 13. However, the City of El Paso misstates the holding of *Castro*, a case decided on summary judgment. *Casto*, 2016 WL 2855468, at *10 (holding that the plaintiff's failure-to-train claim failed due to the plaintiff's failure to prove deliberate indifference and because the plaintiff's expert testified in support of the defendants' training). Moreover, while the City of El Paso is free to not adopt a policy

---

[6] Plaintiffs' complaint alleges that the implementation of these policies in Houston resulted in a 57% decrease in the likelihood of officers using their guns during a mental health crisis and a 58% decrease in Albuquerque of the use of SWAT teams for crisis intervention calls. Compl. at 10.

implementing crisis intervention teams, a plaintiff harmed by that decision is free to pursue a lawsuit based on such a decision. Thus, Plaintiffs have plausibly stated the first element of a *Monell* claim for failure to institute proper procedures.

Next, Plaintiffs must identify a policy maker who can be charged with actual or constructive knowledge. *See Pineda, supra*, 291 F.3d at 328. Plaintiffs identify Chief Allen as the policy maker because he has the power to implement such a procedure. Compl. at 10–11. The City of El Paso does not dispute that Chief Allen is the policy maker. *See* El Paso Mot. at 12–13. Plaintiffs allege that Chief Allen is aware of these programs and their effectiveness. Compl. at 10–11. The City of El Paso does not contest these assertions. *See* El Paso Mot. at 12–13. Therefore, Plaintiffs have plausibly stated the second element of a *Monell* claim for failure to institute proper procedures.

Finally, Plaintiffs must plausibly allege that the failure to adopt the policy is the "moving force" for the constitutional violation. *See Pineda, supra*, 291 F.3d at 328. Plaintiffs contend that Chief Allen is both aware of the effectiveness of crisis intervention teams and aware of his officers' alleged issues with excessive force when encountering mentally ill persons in crisis, but Chief Allen has deliberately chosen not to implement any policies to rectify the issue. Compl. at 10–11. Plaintiffs buttress these allegations with statistics pointing to the effectiveness of crisis intervention teams in other cities in reducing the use of force against mentally ill persons in crisis, statistics showing a disproportionate rate of the use of force in El Paso against mentally ill persons, and eight recent similar incidents to the one at issue in the instant case. *Id.* at 10, 12–16. The City of El Paso counters that Plaintiffs cannot prove direct causation or deliberate indifference. El Paso Mot. at 12–13. In support, the City of El Paso claims that it is rank speculation to assert that a crisis intervention team would have handled the situation differently

than Officer Escajeda and that Plaintiffs cannot prove that the City made a deliberate choice not to adopt the policies discussed herein. *Id.* at 13. First, Plaintiffs have included a number of statistics creating a reasonable inference that a crisis intervention team could have handled the situation differently; at this stage in the litigation, this is sufficient to plausibly state causation. Second, Plaintiffs have included a number of statistics and eight similar incidents that have occurred over the past four years indicating that Chief Allen was on notice of his officers' problem with using excessive force on mentally ill persons. Thus, Chief Allen's failure to adopt a policy to attempt to rectify those issues, despite allegations that he was aware of successful policies adopted elsewhere, is sufficient for the Court to draw a reasonable inference of liability here. Therefore, Plaintiffs have plausibly stated all three elements of a *Monell* claim for failure to institute proper procedures. Accordingly, the Court DENIES the City of El Paso's Motion to Dismiss Plaintiffs' failure-to-institute-proper-procedures claim.

### 4. Excessive Force

Plaintiffs allege that the City of El Paso has a persistent, widespread practice of using excessive force against persons exhibiting signs of mental illness and against El Pasoans in general. Compl. at 12–17. However, Plaintiffs, in their response, narrow the issue to just a custom of using excessive force against persons exhibiting signs of mental illness. Pls.' Resp. El Paso Mot. at 17–22.

First, in order to prove *Monell* liability, Plaintiffs must allege a custom or policy. *See Pineda, supra*, 291 F.3d at 328. Plaintiffs assert that the City of El Paso has a persistent, widespread practice of using excessive force against persons exhibiting signs of mental illness. Compl. at 12–17. In support of this allegation, Plaintiffs offer statistics showing that the percentage of mentally ill persons shot and killed by the EPPD is grossly disproportionate to the

national average. *Id.* at 12. Further, Plaintiffs offer detailed accounts of eight other instances from 2013 to 2016 of the alleged use of excessive force against mentally ill persons. *Id.* at 13–16. The City of El Paso counters that Plaintiffs cannot prove a persistent, widespread practice because all of the similar incidents are distinguishable and the statistics are not relevant due to the fact that Mr. Ramirez was tased rather than shot. El Paso Mot. at 14–17. Nevertheless, while the eight incidents are not factually identical to what happened to Mr. Ramirez, they all involved the alleged use of excessive force by the City of El Paso against mentally ill persons in crisis. Further, while Mr. Ramirez was not shot, the statistics are still relevant here because they indicate that the City of El Paso disproportionately uses force against persons exhibiting signs of mental illness. Plaintiffs have introduced sufficient factual allegations to allow the Court to draw a reasonable inference that the City of El Paso has a custom of using excessive force against persons exhibiting signs of mental illness. Thus, Plaintiffs have plausibly stated the first element of a *Monell* claim for excessive force.

Next, Plaintiffs must identify a policy maker who can be charged with actual or constructive knowledge and plausibly allege that the custom is the "moving force" for the constitutional violation. *See Pineda*, *supra*, 291 F.3d at 328. Plaintiffs identify Chief Allen as the policy maker because he has the power to take action to prevent excessive force. Compl. at 12. The City of El Paso does not dispute that Chief Allen is the policy maker. *See* El Paso Mot. at 13–17. Plaintiffs allege that Chief Allen has direct knowledge of his officers' use of excessive force against the mentally ill and has failed to act to remedy the issue. Compl. at 12. Moreover, Plaintiffs assert that Chief Allen's failure to discipline, train, or otherwise address the City of El Paso's problem with officers using excessive against the mentally ill is the "moving force" for the alleged excessive force at issue here. *Id.* The City of El Paso counters that there is no proof

that Chief Allen knew of any wrongful conduct and chose to do nothing or that the conduct involved in the eight similar incidents was even wrongful. El Paso Mot. at 15–17. Plaintiffs respond that Chief Allen's position in the disciplinary process means that he either knew or should have known that wrongful conduct took place. Pls.' Resp. El Paso Mot. at 21–22. Plaintiffs have plausibly alleged that Chief Allen, as the final arbiter in the disciplinary process, has actual or constructive knowledge of wrongful conduct. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984) ("Constructive knowledge may be attributed to the governing body on the ground that it would have known of the violations if it had properly exercised its responsibilities").

As for the City's claim that the officers involved in the eight incidents did not commit wrongful conduct, the basis for this argument is that because the officers were not disciplined for their use of force, their conduct was not wrongful. However, the crux of Plaintiffs' claim is that Chief Allen's refusal to discipline officers acquiesced to their use of excessive force. The Court generally accepts well-pleaded facts as true, so Plaintiffs have plausibly alleged wrongful conduct on the part of the officers involved in those incidents. *See Gines*, 699 F.3d at 816. Next, the City of El Paso argues that Plaintiffs have not alleged sufficient factual allegations to prove a pattern, El Paso Mot. at 14, but the Court has already rejected that argument in this Order. Plaintiffs have alleged sufficient factual allegations to allow the Court to draw a reasonable inference that Chief Allen had knowledge of his officers' custom of using excessive force against mentally ill persons, did not act to remedy the problem, and that inaction resulted in the alleged constitutional deprivation at issue here. Therefore, Plaintiffs have plausibly stated all three elements of a *Monell* claim for excessive force. Accordingly, the Court DENIES the City of El Paso's Motion to Dismiss Plaintiffs' excessive-force claim.

**B. Plaintiffs' Claims against Officer Escajeda**

Plaintiffs assert that Officer Escajeda acted unreasonably when he tased Mr. Ramirez, which violated Mr. Ramirez's rights under the Fourth and Fourteenth Amendments to the United States Constitution. Compl. at 18. Specifically, Plaintiffs argue that Officer Escajeda's use of force was objectively unreasonable and excessive because he violated the EPPD use of force policy when he tased Mr. Ramirez. *Id.* Officer Escajeda counters that he is entitled to qualified immunity and that Plaintiffs' allegations are insufficient to prove liability under the "facial plausibility" standard. Escajeda Mot. at 5–9.

The Supreme Court has "mandated a two-step sequence for resolving government officials' qualified immunity claims." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "We must determine (1) whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Darden v. City of Fort Worth, Texas*, 866 F.3d 698, 702 (5th Cir. 2017) (internal quotation marks omitted) (quoting *Pearson*, 555 U.S. at 232). "A right may be clearly established without a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Hanks v. Rogers*, 853 F.3d 738, 746–47 (5th Cir. 2017) (internal quotation marks omitted) (quoting *White v. Pauly*, 137 S. Ct. 548, 551 (2017)). *See also Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." (internal quotation marks and citations omitted)). To prevail on an excessive-force claim, the

plaintiff must show "(1) [an] injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Darden*, 866 F.3d at 703 (internal quotation marks omitted) (quoting *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396–97 (U.S. 1989).

In the instant case, there is no dispute that Plaintiffs have alleged an injury which resulted from the use of force. Pls.' Resp. Escajeda Mot. at 4–5. *See also Newman v. Guedry*, 703 F.3d 757, 763 (5th Cir. 2012). With regard to the reasonableness element, the Supreme Court, in *Kentucky v. Graham*, 473 U.S. 159 (1985), articulated three guideposts for courts to consider when determining if a use of force was reasonable under the circumstances: "(1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to police officers or civilians; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by fleeing the scene." *Khansari v. City of Houston*, 14 F. Supp. 3d 842, 853 (S.D. Tex. 2014). Here, Plaintiffs have alleged that Mr. Ramirez committed no crime, that he had no weapon and was no threat to Officer Escajeda, and that he was not attempting to flee the scene or resisting arrest. Compl. at 2–4. Plaintiffs further bolster their allegations by noting that Officer Escajeda's use of force violated EPPD policy. *Id.* at 4. Officer Escajeda argues that Plaintiffs' allegations are conclusory and an implausible story that Plaintiffs invented. Escajeda Mot. at 8–9. However, on a motion to dismiss, the Court generally accepts well-pleaded facts as true. *See Gines*, 699 F.3d at 816. Therefore, Plaintiffs' allegations allow the Court to draw a reasonable inference that Officer Escajeda's use of force was excessive and violated Mr. Ramirez's Fourth Amendment rights.

Next, Plaintiffs must plausibly allege that the right at issue was clearly established at the time of Officer Escajeda's misconduct. *See Darden*, 866 F.3d at 702. Plaintiffs point to *Newman v. Guedry* as proof that Officer Escajeda violated a clearly-established right when he tased Mr. Ramirez. Pls.' Resp. Escajeda Mot. at 6–7. In *Newman*, the officers argued that they "had no reasonable warning that tasing Newman multiple times violated Newman's constitutional rights, because there was then no binding caselaw on the appropriate use of tasers." *Newman*, 703 F.3d at 763. However, the Fifth Circuit held that "[l]awfulness of force . . . does not depend on the precise instrument used to apply it. Qualified immunity will not protect officers who apply excessive and unreasonable force merely because their means of applying it are novel." *Id.* at 763–64. Therefore, Plaintiffs' allegations allow the Court to draw a reasonable inference that Officer Escajeda's use of force was excessive and violated a clearly-established right. Accordingly, the Court DENIES Officer Escajeda's Motion to Dismiss Plaintiffs' excessive-force claim.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendant City of El Paso, Texas's "Rule 12 Motion to Dismiss Plaintiffs' Original Complaint" (ECF No. 8) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Ruben Escajeda, Jr.'s "Motion to Dismiss Plaintiffs' Original Complaint" (ECF No. 14) is **DENIED**.

So ORDERED and SIGNED this /*/ day of January 2018.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE