**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **MARIA RAMIREZ and PEDRO** | § | |
| **RAMIREZ, as Representatives of the** | § | |
| **Estate and Statutory Death Beneficiaries** | § | |
| **Of DANIEL ANTONIO RAMIREZ** | § | |
| | § | |
| **Plaintiffs,** | § | |
| | § | **CIVIL NO. 3:17-cv-00193-DCG** |
| **vs.** | § | |
| | § | |
| **RUBEN ESCAJEDA, JR. and** | § | |
| **CITY OF EL PASO, TEXAS** | § | |
| | § | |
| **Defendants** | § | |

## DEFENDANT CITY OF EL PASO'S MOTION IN LIMINE

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Now Comes CITY OF EL PASO, TEXAS ("City"), and appears under FED. R. EVID. 104(a) to request the Court, outside the presence of the jury, exclude the categories of evidence identified in Subsection III of this Motion.  This Motion is filed prior to the hearing set on May 25, 2023, in order to give the Court ample time to address any issues needing further development prior to the Pre-trial filing requirements that will be due June 29, 2023.

Alternatively, the City requests the Court to order Plaintiffs not to mention or bring before the jury, either directly or indirectly, upon voir dire, reading the pleadings, statement of the case, interrogation of witnesses, argument or objection before the jury, or in any other manner or means inform the jury or bring to the jury's attention any of the matters set forth in the numbered paragraphs below, unless and until such matters have first been called to the Court's attention out of the presence and hearing of the jury and a favorable ruling received as to the

admissibility and relevance of such matters.

For purposes of this case and this Motion in Limine, "this incident" refers to the tasing of Daniel Ramirez on June 23, 2015. "Subsequent incidents" refers to any El Paso Police Department incidents that took place after the Ramirez incident on June 23, 2015. "Prior incidents" or references to incidents "prior" refers to incidents that took place before the Ramirez incident on June 23, 2015.

## I.
## MOTION IN LIMINE STANDARD

1.     A motion in limine is used to secure the exclusion of inadmissible evidence before it is actually offered at trial. *Luce v. United States*, 469 U.S. 38, 40 n. 2 (1984).  The City seeks to prevent the interjection of inadmissible evidence that is highly prejudicial and cannot be cured. *Noviello v. Holloway Funding Group,* Case No. 3:22-cv-52-BN, 2023 WL 2195768, at *1 (N.D. Tex. Feb. 23, 2023) (quoting *O'Rear v. Freuhauf Corp*., 554 F.2d 1304, 1306 n.1 (5th Cir. 1977)).

2.     This case involves a high potential for the trial to be interrupted mid-course for the consideration of lengthy and complex evidentiary issues." *Grant v. CRST Expedited, Inc*. Civil Action No. 1:18-CV-433, 2021 WL 2101741, at *1 (E.D. Tex. April 7, 2021) (additional citations omitted). In the instant case, all parties and counsel will benefit if gatekeeping decisions are made now.

## II.
## THE NARROWLY-DEFINED CONDUCT UNDERPINNING THE *MONELL* CLAIM

3.     "Irrelevant evidence is not admissible." FED. R. EVID. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." *Hicks-Fields v.*

*Harris Cnty., Tex.*, 860 F.3d 803, 809 (5th Cir. 2017) (referencing FED. R. EVID. 401). The starting point for relevance necessarily begins with what is being determined by the action.

4.      The case against the City is a *Monell*[1] action. The nexus between the official policy and the constitutional violation requires specificity; that is, a particular policy approved by those with policymaking authority must have been the moving force behind the harm and the harm must have been a predictable consequence of the policy, which was known to the policymaker. A pattern or practice may be used to show the existence of a policy, but that pattern/practice-policy must bear relation to the alleged Constitutional deprivation. Accordingly, evidence offered to show a policy, the highly predictable consequences of which are known to a policymaker, is only relevant if it makes it more probable that *the constitutional injury alleged here* resulted therefrom.  Incidents that are dissimilar to those at issue in the case at bar cannot, as a matter of law, establish a pattern and, therefore, are not relevant. *See Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 848 (5th Cir. 2009); A pattern requires similarity and specificity; "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis ex rel. McCully v. City of North Richland Hills,* 406 F.3d 375, 383 (5th Cir. 2005); *Scott v. White,* No. 1:16-CV-1287-RP, 2018 WL 2014093, at *8 (W.D. Tex. Apr. 30, 2018).  They must be substantially similar at a factually detailed level.

5.      During the interlocutory appeal, the alleged constitutional injury in this case was defined by the Fifth Circuit with the necessary "specificity and granularity," required by Fifth Circuit standards. On appeal, the Court described the harm here as "**tasing someone who may be hanging himself, who may or may not have a weapon, who does not respond to the officer's**

---

[1] There are three elements to a *Monell* claim: (1) a policymaker who (2) promulgates a policy or custom (3) that is the moving force behind a constitutional violation. *Monell v.  Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694, S.CT. 2018,  56 L.Ed.2d 611 (1978)

**commands—all when the officer approaches him rapidly, alone, and in the dark.**" *Ramirez v. Escajeda*, 44 F.4th 287, 294 (5th Cir. 2022)(emphasis added). The Court repeatedly emphasized that in this case, unlike the cases relied on by Plaintiffs, the officer "**did not have [Ramirez] 'subdued' and under his control when he used the taser**" and Ramirez was "***not in custody***" when the taser was used. *Id.* (emphasis added).

6.      The Fifth Circuit's interpretation of the injury is much narrower than this Court used in its Order Denying the City's Summary Judgment where the constitutional violation was framed as an officer's use of a taser "against a subdued person who neither committed any crime nor who resisted the officers' authority." [Dkt. 154 p. 33]. The Fifth Circuit's limiting language shapes the relevancy inquiry before the Court in this Motion in Limine. The City moves to exclude the categories of evidence described below because they do not make it more probable that the alleged policies were the moving force behind what occurred in this specific instance.

7.      Here, the policies alleged by Plaintiffs to be at issue are the (1) the City's written Situational Use of Force Policy; (2) the City's alleged policy decision not to implement a Crisis Intervention Team prior to Ramirez' death; and (3) the City's alleged unwritten policy of leniency.  Plaintiffs also allege that the City failed to train its officers on dealing with persons having mental health crises.  This court should shepherd the evidence that actually addresses those alleged policy violations, permitting only non-hearsay evidence of misconduct or wrongs that are truly similar as to the conduct, circumstances, and constitutional wrong.  Only in that context does the evidence show that (1) the City's policy makers did or must have known about the misconduct; (2) the pattern of misconduct put the policy maker on notice of illegality and the need for action; and (3) the failure to do so actually caused the incident with Daniel Ramirez.

8.      Based on prior incidents, the Chief of the El Paso's Police Department had to be aware of

the real risk of officers using Taser devices in a manner that the Fifth Circuit says was not clearly established.  Generic risks of excessive force, lack of aggression or resistance, and the ambiguity of whether a weapon was present are no longer enough to put the Chief on notice of that constitutional wrong or its probability.

## III.
## CATEGORIES OF INADMISSIBLE EVIDENCE

9.      The City hereby requests that the Court exclude the following categories of information from trial, or, at a minimum order Plaintiffs to obtain a ruling before presenting any such evidence to the jury.

**Prior incidents where this Court determined that only constitutionally permissible force was used.**

10.     This court has already concluded that incidents in the matters of **Fernando Gomez (aka Mercedes de Marco)** (2013) and **David Gandara** (2015) are not relevant because this Court has already determined that the use of force in those cases was constitutionally permissible. *See* [Dkt. 154, pp. 56-60, 71-75].

**Prior incidents of force if Plaintiffs have not established the force was unconstitutional through a judicial or administrative findings supported by non-hearsay evidence.**

11.     Any attempt to elicit testimony or offer any information or document pertaining to any prior use of force incidents by El Paso police officers in which Plaintiffs have not established that policy violations, including the use of force, were, in fact, *unconstitutional* uses of force as opposed to policy or training violations.  The standards are clearly different.  These should be excluded because it cannot form the basis of any pattern, practice or custom of excessive force or deliberate indifference, applying only to constitutional injury.   Even if facts related to use of force that has not been determined to have been unconstitutional were relevant, what little

probative value they afford is substantially outweighed by a danger of unfair prejudice to the City and, therefore, the evidence is inadmissible. FED. R. EVID. 403.

**Prior (or subsequent) incidents of force based on hearsay evidence of the operative facts.**

12.     Plaintiffs are required to present admissible evidence of constitutional misconduct, in support of such claims as a part of their burden of proof to show a *Peterson/Davis* pattern.  For instance, Plaintiffs should not be able to cite to a witness statement where the witness stated excessive force was used as a means of proving excessive force occurred. *See, e.g., Meirs v. Ottawa Cnty.,* 821 F. App'x 445, 462-63 (6th Cir. 2020) (the Sixth Circuit upheld the trial court's exclusion on hearsay grounds of an inmates' written message that the inmate called for medical treatment and was refused treatment as evidence that he was denied medical care in a *Monell* claim against the County); *Fields v. City of Chicago*, 981 F.3d 534, 545 (7th Cir. 2020) (upholding trial court's decision to exclude recorded conversations where witnesses stated that a criminal defendant knew about a bribe when it was offered to show that the criminal defendant knew about the bribe); *Estate of Perry v. Wenzel*, 872 F.3d 439, 448, n.2 (7th Cir. 2017) (in a *Monell* case, the Court refused to consider a witness-inmate's statement contained in a police investigation that the inmate saw jailers drop the decedent on his face because the statement was it was inadmissible hearsay); *Randle v. Tregre*, 147 F.Supp.3d 581, 597 (E.D. La. 2015) (explaining that the witness statements and summaries of witness statements within an internal affairs file that state excessive force occurred cannot be used to prove excessive force occurred) (citing *Rea v. Wisconsin Coach Lines, Inc.*, No. 12–1252, 2015 WL 1012936, at *4 (E.D. La. Mar. 5, 2015) and *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1311 (5th Cir. 1991)). Rather, Plaintiffs should be required to call the witness to the alleged excessive force to testify about his or her knowledge of the incident claimed to be excessive force. Similarly, Plaintiffs

should not be allowed to try and show that a pattern of excessive force cases similar to the use of force at issue here occurred by simply offering statements that claim some impermissible use of force occurred. *See Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 617-18 (7th Cir. 2022) (In evaluating a *Monell* claim, the Seventh Circuit found that a write up about inmate conditions made by a correctional healthcare monitor was hearsay and, "consequently, we cannot look to the [] reports as evidence for the truth of what happened to other inmates.). Again, Plaintiffs should be required to call a witness with personal knowledge of the incident(s) to testify about his or her observations of the incident. Finally, Plaintiffs should not be allowed to try and show that the Chief or any other policymaker was on notice that excessive force had occurred by simply showing that the Chief or policymaker had knowledge of allegations, complaints, or statement(s) *claiming* excessive force occurred.

**Prior incidents that do not involve similar alleged constitutional violations to those in this case, as defined by the Fifth Circuit.**

13.     This court should revisit its prior Motion for Summary Judgment ruling concerning other prior incidents, based on the narrow factual scenario here, that defines *Peterson/Davis* "substantial similarity." Any attempt to elicit testimony or offer any information or document pertaining to prior use of force incidents that either did not involve truly similar and specific uses of force, or for which similar causation of death or injury is not attributable to the use of force, should be excluded.  The City contends that this excludes deadly force cases entirely.  This includes but is not limited to the use of force incident involving **Daniel Saenz** (2013), who was shot outside of the jail while in handcuffs as he struggled with police.  It includes **Erik Salas-Sanchez** (2015), who was tased and shot in his home after a verbal exchange with officers, under circumstances involving the alleged presence and attack with a gun or "edged weapon," totally unlike the non-responsive individual in this case, and three officers that were present.  It would

exclude **Francisco Ramirez** (2016), who clearly had a knife or box cutter.  The fact questions found by this court in those cases on the eminence of actual harm still do not make them similar to the use of a Taser in the dark on someone not responding but feared as a potential threat. None of these incidents bear resemblance to the decedent here, who was suicidal and tased—not shot—after not responding to Officer Escajeda's commands.

14.     This exclusion should also include the **use-of-force history and Internal Affairs file of both Officer Escajeda and of fired former-officer Jorge Gonzalez**, except for incidents similar to the incident here ("tasing someone who may be hanging himself, who may or may not have a weapon, who does not respond to the officer's commands—all when the officer approaches him rapidly, alone, and in the dark" and where the person is not subdued or under the officer's control or custody). *Ramirez v. Escajeda*, 44 F.4th 287, 293–94 (5th Cir. 2022).

**Officer Escajeda**

15.     Subsequent to this court's prior ruling in Docket 196, Plaintiffs sought documents for Officer Escajeda that "have been created in the last two years since the time of its supplementation in July 2020 to the present" and the court compelled the limited set of supplemental production of Officer Escajeda's disciplinary history and use of force.  The documents that have been produced, cover 97 incidents. Eight of them involve the use of a Taser beginning one year after the Daniel Ramirez incident.  The City anticipates that Plaintiffs will try to make a wholesale offer of a chart and Officer Escajeda's Internal Affairs history, like the offer for Jorge Gonzales in the prior Motion for Summary Judgment in this instant case and in the pretrial disclosures before the trial of *Celia Sanchez and Oscar Salas, Statutory Death Beneficiaries of Erik Emmanuel Salas-Sanchez v. Mando Kenneth Gomez, Alberto Rivera, Pamela Smith and the City of El Paso, Texas,* Case No. 3:17-CV-00133-DG (U.S. District Court,

Western District of Texas, El Paso Division).   None of the incidents have the substantial similarity required by *Peterson/Davis.* Because they were not a part of the prior Motion and this court's rulings, the City is prepared to file a motion to exclude evidence in those incidents if the court wishes it to do so, or to proceed at pre-trial or at trial to show the gross factual dissimilarities involved.

16.     Officer Escajeda's file includes, for example, complaints that he was discourteous, searched for a vehicle after the search was called off, and gave a verbal warning to a suspect during a traffic stop rather than issuing a written warning—none of which are relevant here. There are also investigations involving uses of force, but are nothing like the incident here. For instance, where Escajeda's name plate cut the back of a suspect whom Escajeda was escorting to a jail cell or where Escajeda performed a takedown to get control of a subject who was actively fighting with other officers. Incidents like these, which are dissimilar from the alleged constitutional injury described here are not relevant.   The prior and subsequent uses of a Taser by Officer Escajeda are demonstrably not similar, and none of those involve a known claim of mental health issues as a contributing issue.  See *Robles v. Ciarletta*, 797 F. App'x 821, 833 (5th Cir. 2019) ("To survive a motion to dismiss on an unconstitutional custom or practice claim, plaintiffs must point to factual allegations sufficient to allow a reasonable inference that there was a pattern of misconduct involving similar acts. A pattern requires "sufficiently **numerous prior** **incidents** as opposed to isolated instances.") (citing *Culbertson v. Lykos*, 790 F.3d 608, 628 (5th Cir. 2015) (quoting Peterson v. City of Fort Worth, 588 F.3d 838, 851 (5th Cir. 2009)). In *Robles*, the Fifth Circuit plainly stated that "deliberate indifference generally **requires notice** **of a pattern of similar violations at the time the plaintiff's own rights were violated**. *Id.* (emphasis added) Even if facts related to use of force incidents that are dissimilar to the incident

here were relevant, what little probative value they afford is substantially outweighed by a danger of unfair prejudice to the City and, therefore, the evidence is inadmissible. FED. R. EVID. 403.

**Jorge Gonzalez**

17.    The City moves to exclude these incidents, four of which were addressed in particular and allowed by this court in Dkt. 154.  One of those is a Taser incident, which the City contends is not substantially similar (active flight and resistance), but the court previously found it relevant.  The City strongly contends that the remaining incidents cannot be similar, and that the Fifth Circuit analysis of force in this case has narrowed the framework.  They involved deadly force (one shooting resulting in a death, one shooting with no injury, and one display of a firearm in the arrest of a subject with a knife).  The City requests the court revisit its prior evaluation of the incidents or direct further presentation and briefing by motion prior to trial.

18.    Even if facts related to use of force incidents that are dissimilar to the incident here were relevant, what little probative value they afford is substantially outweighed by a danger of unfair prejudice to the City and, therefore, the evidence is inadmissible. FED. R. EVID. 403.

**Subsequent incidents if offered to show a pattern or practice that constituted a City policy at the time of the incident or deliberate indifference on the part of the Chief.**

19.    The City renews its prior arguments against any attempt to elicit testimony or offer any information or document pertaining to any subsequent incidents involving either the use of force or mental health-interaction deficiencies, and incorporates its briefing above.  In the alternative, the City moves to preclude the offer of matters substantially after the fact, and requests that the court determine their timely proximity outside the presence of the jury.  Subsequent incidents cannot establish a City pattern or practice or the alleged deliberate indifference of Chief Allen in regards to training; supervision; discipline or investigation of officers in these areas should be

excluded. This includes, but is not limited to, the subsequent incidents involving **Francisco Ramirez** (2016).

20.     It is axiomatic that a policymaker cannot be on notice of a pattern that has not yet revealed itself.

**Subsequent remedial measures offered to establish fault on the part of the City.**

21.     Any attempt to mention, argue, elicit testimony or offer any information or document pertaining to the City's revision of its Revised Mentally-Ill Seizure Policy or implementation of a Critical Incident Response Team should be excluded.

22.     First, Defendant dispute that the **Mentally-Ill Seizure Policy** was deficient at the time of the incident, however, Plaintiffs have characterized the City's policy as unconstitutional and the subsequent revision of this policy after this incident as a "subsequent remedial measure" designed to "fix" the City's unconstitutional policy. *Luera v. Snyder*, 599 F.Supp. 1459, 1463 (D. Co. 1984) (testimony about changes in police department policies post incident are not admissible). Because of the Plaintiff's argument and implication that the revised policy was a subsequent remedial measure, the adoption of said amended policy is inadmissible as a subsequent remedial measure to show culpable conduct. *Maddox v. City of Los Angeles*, 792 F.2d 1408, 1417 (9th Cir. 1986)(evidence of a post-incident disciplinary proceeding is inadmissible as it constitutes a remedial measure within the meaning of FED. R. EVID. 407).

23.     Similarly, any attempt to mention, argue, elicit testimony or offer any information or document pertaining to the City's implementation of an EPPD Crisis Intervention Team (CIT) or Crisis Management Team (CMT) subsequent to the incident made the basis of this lawsuit should be excluded. Although the City disputes that the failure to have a CIT or CMT-specific unit or team was improper or unconstitutional, for which a "remedial measure" of

implementation of such a unit was even needed, Plaintiffs have characterized the City's lack of a designated CIT or CMT at the time of this incident as unconstitutional.

24.     Plaintiffs incorrectly suggest that the City's "fix," therefore shows that Chief Allen was deliberately indifferent to the predictable consequences of not having a CIT or CMT at the time of the incident. Because of the Plaintiffs' argument and implication that a subsequent implementation or creation of a CIT team or unit was a subsequent remedial measure, the implementation or creation of any CIT or CMT is inadmissible as a subsequent remedial measure. *See*, *Luera*, supra at 1463; *Maddox,* supra. at 417. Further, any evidence of subsequent remedial measures is not relevant to the policymaker's knowledge and decisions preceding the incident and must be excluded. Even if evidence of remedial measures were not barred under FED. R. EVID. 402 and 407, what little probative value it affords is substantially outweighed by a danger of unfair prejudice to the City and, therefore, the evidence is inadmissible. FED. R. EVID. 403.

**Suggestions that there are or should be separate standards for use of force as to persons with mental health issues or illness.**

25.     Any attempt to elicit testimony or offer any information or document pertaining to any alleged separate standard for police to follow regarding use of force as to persons with mental health issues should be excluded. *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1778, 191 L. Ed. 2d 856 (2015). Introduction of any such evidence is not relevant and unreasonably prejudicial, therefore, inadmissible. FED. R. EVID. 401, 403, 411.

**Any "statistical data" contained within Plaintiffs' pleadings regarding mental health related officer-involved excessive uses of force.**

26.     Any attempt to mention, argue, elicit testimony or offer any information or document pertaining to Plaintiffs provide various "statistical" conclusory references in their pleadings, in

relation to mental health officer involved excessive uses of force, both in El Paso and nationwide, should be excluded. These statistical conclusory statements are not supported by reliable expert opinions, are based entirely on hearsay documentation, or not supported by the discovery offered in this case.

**Opinions that the City and/or its officers acted contrary to "accepted" or "best" police practices in using force.**

27.     Such testimony is irrelevant to the constitutional liability issues in this case, and such testimony is likely to be unfairly prejudicial insofar as it will confuse the jury as to the applicable legal standard—the issue is whether constitutional standards have been violated, not whether "accepted" police practices have. Alleged violations of internal policies, which are usually based on best or accepted practices, do not themselves give rise to constitutional liability. *Evans v. Marlin*, 986 F.2d 104, 108 n.6 (5th Cir. 1993) ("The failure to follow procedural guidelines, standing alone, does not implicate constitutional liability."); *Marquez v. City of Albuquerque*, 399 F.3d 1216, 1223 (10th Cir. 2005) ("[V]iolations of state law and police procedure generally do not give rise to a 1983 claim for excessive force.")[2].

**Opinions or comment concerning Defendant officers' motivation or intent.**

28.     Legal opinions from lay or expert witnesses in the form of an opinion, concerning Officer Escajeda's motivation or intent should be excluded. FED. R. EVID. 401, 403, 601, 702.

**Hypothetical tactics.**

29.     De-escalation tactics which could have been employed by Defendant Officer Escajeda, but were not, such as further de-escalation or soothing counseling, are irrelevant, immaterial, and unfairly prejudicial. *See, United States v. Sharpe*, 470 U.S. 675, 686-87 (1985) ("A creative

---

[2] *See also Thompson v. City of Chicago*, 472 F.3d 444, 453 (7th Cir. 2006) (holding that the introduction of the Chicago police department policies was not relevant to the issue of whether the plaintiff's Fourth Amendment rights had been violated, as the policies "[shed] no light on what may or may not be considered.

judge engaged in post hoc evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. . . The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it."); *Ramirez v. Knoulton* 542 F.3d 124, 130 (5th Cir.) (no constitutional claim where an officer uses deadly force in response to a reasonable belief of a threat of serious harm…"that officers could have moved away from the car is, unfortunately a suggestion more reflective of the "'peace of a judge's chambers' than of a dangerous and threatening situation on the street" (citing *Elliott v. Leavitt*, 99 F.3d 640, 643 (4th Cir. 1996)). Introduction of any such evidence is unreasonably prejudicial and irrelevant. FED. R. EVID. 401, 403, 411.

**George Atkins' resignation from the Shooting Review Board.**

30.    Any attempt to elicit testimony or offer any information or document pertaining to George Atkins' resignation from the Shooting Review Board subsequent to this incident; and any opinions other than those he reached and provided during the course of his decision making as a member of the Shotting Review Board and Disciplinary Review Board.  Any hearsay statements should be excluded. FED. R. EVID. 401, 403, 411.

**Legal conclusions about whether Officer Escajeda used excessive force.**

31.    Legal opinions from lay or expert witnesses on whether Officer Escajeda used excessive force, or whether his conduct was reasonable under the Fourth Amendment or the Due Process Clause, are irrelevant and unduly prejudicial and should be excluded. *See* FED. R. EVID. 704(a); *United States v. Williams*, 343 F.3d 423, 435 (5th Cir. 2003) ("Reasonableness under the Fourth Amendment or Due Process Clause is a legal conclusion.") (citing *United States v. Chavez*, 281 F.3d 479, 483 (5th Cir. 2002)).

**Any use of force incidents not pled by Plaintiffs in their live Complaint or identified in their Summary Judgment response.**

32.     Testimony or any information or document pertaining to the use of force or mental health-interaction incidents by El Paso Police Department officers not pled by Plaintiffs' in their live Complaint, or Summary Judgment pleadings, should be excluded.

**Undisclosed/untimely disclosed witnesses.**

33.     Any attempt to call or refer to a witness whose identity and relevant knowledge has not been timely and properly disclosed under FED. R. CIV. P. 26, 37(c)(1) should be excluded. This includes but is not limited to all witnesses Plaintiffs' have attempted to disclose after the discovery deadline.

**Undisclosed damages.**

34.     Testimony, information, or documents pertaining to (1) any alleged injury of the Plaintiffs that was not disclosed in the Plaintiffs' disclosures; or (2) any monetary damages not fully disclosed should be excluded. FED. R. CIV. P. 26, 37(c)(1).

**New Theories of Liability**.

35.     Testimony, questions, offers of proof or evidence concerning factual allegations or legal theories of liability not set forth or otherwise contained in Plaintiffs' live Complaint or Plaintiffs' Motion for Summary Judgment Response should be excluded.

**Undisclosed documents/evidence.**

36.     Testimony, information, or documents regarding any documents not properly produced in response to proper, timely discovery requests should be excluded

**Undisclosed opinions of retained experts.**

37.     Opinions from an expert which has not been adequately disclosed in his or her expert report should be excluded. Fed. R. Civ. P. 26, 37(c)(1).

**The existence of Insurance or Self-Insurance.**

38.     Comments or questions relating to the City's insurance or self-insurance from Plaintiffs, Plaintiffs' counsel and witnesses should be excluded and instruction given that Plaintiffs' counsel instruct all witnesses in advance from touching upon such subject in their answers and testimony.

**Evidence not before the Court**.

39.     Questions or testimony relating to the contents of documents, memos, or correspondence, which are not before the Court or offered into evidence should be excluded.

**Settlement offers in this case.**

40.     Counsel for Plaintiffs should be prohibited from referring to any statement or offer of settlement which has been made or any reference to the fact that such lawsuit could not be or was not settled, compromised or resolved, including comments that some cases have to be brought to trial, it was necessary to file this suit, or other similar comments.

**Resolution of other cases, including civil settlements, disciplinary settlements, and arbitration awards.**

41.     Any attempt to elicit testimony or offer any information or document pertaining to the City's settlement of any other lawsuit involving an alleged unconstitutional use of force by the El Paso Police Department should be excluded. Introduction of any such evidence is unreasonably prejudicial and irrelevant. Fed. R. Evid. 401, 403, 411.

42.     Any attempt to elicit testimony or offer any information or document pertaining to the Chief's settlement of any discipline imposed in order to avoid an officer's appeal of discipline should be excluded. Introduction of any such evidence is unreasonably prejudicial and irrelevant. Fed. R. Evid. 401, 403, 411.

43.    Any attempt to elicit testimony or offer any information or document pertaining to arbitration awards, including the arbitration award in the **termination of Jose Flores** in relation to the Saenz shooting. *Carter v. City of Melbourne, Fla.,* 731 F.3d 1161, 1167-1168 (11th Cir. 2013) (The fact that an outside labor arbitrator overruled the Chief's decision does not mean that a City policy or custom is established. *Valle v. City of Houston*, 613 F.3d 536, 549 (5th Cir. 2010) (No "deliberate indifference" where the disciplined officer won his appeal). Introduction of any such evidence is unreasonably prejudicial and irrelevant. Fed. R. Evid. 401, 403, 411.

**Failure to call witnesses**.

44.    Testimony or suggestion Defendant has failed to call any particular witness that would be available equally to either Plaintiffs or Defendant through the subpoena process should be excluded.

**Vouching for Witnesses**.

45.    Counsel for Plaintiffs should be prohibited from attempting to personally vouch for any witness or for Plaintiffs.

**Referencing testimony of witnesses not called to testify**.

46.    Statements that there will probably be testimony of certain facts by witnesses who are not later called to testify at trial should be excluded.

**Jury instructions**.

47.    Plaintiffs should be prohibited from informing the jury in any way that answering any of the jury questions submitted in this case with any particular response would excuse, decrease, increase or maximize (or any other word of similar import) the payment, if any, to be made by Defendant or to Plaintiffs, or that answering any jury question with any particular response would require that some other jury question be answered with a particular response.

**Golden Rule**.

48.     Plaintiffs should be prohibited from making any statements or asking questions about the "Golden Rule;" that is, that the jury panel or individual jurors should "do unto others as you would have them do unto you."

**Counsel Personal Beliefs on Justice**.

49.     Plaintiffs' counsel should not mention or state to the jury their personal beliefs concerning the justice of Plaintiffs' case or their right to recover damages. While counsel may be entitled to say what the facts will show or argue the facts, stating the personal beliefs of counsel is clearly improper.

**Financial hardships**.

50.     Mentioning or stating before the jury that the Plaintiffs are or may be under any financial hardships, should be prohibited as such evidence is of no probative value and would serve only to prejudice the jury.

**Scrapbooks/Photos**.

51.     Seeking to introduce into evidence, exhibiting to the jury or jury panel, and showing to the jury or jury panel, in any way, photo albums or scrapbooks, for the reasons that same are, or could contain, inadmissible hearsay, are repetitive, and are a needless presentation of cumulative evidence should be prohibited. Fed. R. Evid. 403. The only purpose of exhibiting photographs, scrapbooks, etc., would be to seek to arouse the sympathy of the jury, and it would not aid them in determining the issues in this case.

**Mental anguish value**

52.     Plaintiffs, their counsel and any witness produced by them should not be allowed to testify to the value of "mental anguish," since they are not qualified to so testify, nor is their

opinion any greater on this topic than the knowledge possessed by the ordinary jury. Since it is well-settled that an opinion, particularly an expert opinion, must be beyond the competency of the average jury, opinions based upon speculations or surmise should be disregarded. *See* Fed. R. Evid. 702.

**Mentioning Exclusions**.

53.     Statements or questions about the filing of this Motion or any ruling by the Court in response to this Motion, suggesting or inferring to the jury that Defendant has moved to prohibit proof or that the Court has excluded proof of any particular matter, should be excluded.

**Unproven Medical conditions**.

54.     Mention or testimony concerning the future consequences of any injury or disease in the absence of medical testimony beforehand that, in reasonable medical probability, the anticipated conditions will occur, should be excluded.

**Unqualified experts.**

55.     Any attempt to call a witness as an expert witness, who is not shown by knowledge, skill, experience, training or education to be competent to offer such testimony, unless and until the Plaintiff qualifies such person as an expert under Fed. R. Evid. 702, should be excluded. As such no testimony be offered in front of the jury by Plaintiffs' expert witnesses until the experts' qualifications, opinions, and testimony are determined to comply with the requirements of such testimony under Federal Rules of Evidence 702-705.

**Expert Opinions introduced by other witnesses**.

56.     All counsel should be instructed not to mention that they or their client have been told anything by any expert witness concerning any matter, for the reason that such revelation would refer to hearsay, and because said expert is not subject to proper cross-examination by

Defendant's counsel, and for the further reason that such would be an attempt to introduce before the jury expert testimony without a proper predicate concerning the expert's qualifications and abilities to give such testimony.

### ADDITIONAL INSTRUCTIONS

57.   Further, Defendant requests the following:

    a.    That all counsel be instructed not to mention or bring before the jury, either directly or indirectly, upon voir dire, opening statement, interrogation of witnesses, argument, objections before the jury, or by any other means, or in any other manner, any of the matters set forth above, unless and until any such matters have been first called to the Court's attention out of the presence and/or hearing of the jury, and a favorable ruling has been received from the Court as to the admissibility and relevance of any such matters;

    b.    That all counsel be instructed to inform Plaintiffs and all witnesses called by Plaintiffs, not to volunteer, interject, disclose, state, mention in the presence of the jury, or in any other way refer to any of the matters stated above, unless specifically questioned thereon after prior favorable ruling by the Court; and

    c.    That all counsel be instructed that a violation of any and/or all of the Court's instructions, if any, would damage the potential for an impartial trial, and that such violation and failure to abide by the Court's Order may bring about a mistrial.

<div align="center">

**IV.**

**CONCLUSION**

</div>

For the foregoing reasons, Defendant City of El Paso respectfully requests that the Court exclude the above exclude each of the aforementioned categories of evidence. Alternatively, as to each such category, Defendant requests the Court to order Plaintiffs not to mention or bring before the jury, either directly or indirectly, upon voir dire, reading the pleadings, statement of the case, interrogation of witnesses, argument or objection before the jury, or in any other manner or means inform the jury or bring to the jury's attention any of the matters set forth in the numbered paragraphs herein, unless and until such matters have first been called to the Court's attention out of the presence and hearing of the jury and a favorable ruling received as to the admissibility and relevance of such matters.

Defendant requests any other and further relief to which it may be entitled.

Respectfully submitted,

DENTON NAVARRO ROCHA BERNAL & ZECH
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
210/227-3243
210/225-4481 Fax
lfdenton@rampagelaw.com
rldrinkard@rampagelaw.com
smtschirhart@rampagelaw.com
pbernal@rampagelaw.com


By:      */s/ Lowell F. Denton*
LOWELL F. DENTON
State Bar No. 05764700
ROBERT L. DRINKARD
State Bar No. 24007128
SCOTT M. TSCHIRHART
State Bar No. 24013655
PATRICK C. BERNAL
State Bar No. 02208750


ASSISTANT CITY ATTORNEY
MATTHEW G. MARQUEZ
State Bar No. 24116720
MarquezMG@elpasotexas.gov
300 N. Campbell
El Paso, Texas 79901
(915) 212-0033
(915) 212-0034 (Fax)

*Attorneys for Defendant*
*The City of El Paso, Texas*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned, do hereby certify and attest that on this 19h day of May 2023 all parties in interest listed below have received a true and correct copy of the foregoing as indicated or by **electronic mail from the Clerk of the Court.**

Lynn Coyle                                          **E-NOTIFICATION**
Christopher Benoit
THE LAW OFFICE OF LYNN COYLE, PLLC
2515 North Stanton Street
El Paso, Texas 79902

Ray Velarde                                         **E-NOTIFICATION**
1216 Montana Ave.
El Paso, Texas 79902

<div align="center" style="margin-left:auto">

_/s/ Lowell F. Denton_
LOWELL F. DENTON
</div>