# EXHIBIT B

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVIDION**

| | | |
|---|---|---|
| MARIA RAMIREZ and PEDRO RAMIREZ, as Representatives of the Estate and Statutory Death Beneficiaries of DANIEL RAMIREZ, | § § § § § | |
| *Plaintiffs*, | § § § | |
| | § § | CIVIL ACTION NO. 3:17-CV-00193-DCG |
| RUBEN ESCAJEDA, JR., and THE CITY OF EL PASO, TEXAS, | § § § § | |
| *Defendants*, | § | |

**DEFENDANT CITY OF EL PASO'S 12(c) MOTION TO DISMISS AND RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT PURSUANT TO LEAVE**

TO THE HONORABLE UNITED STATES DISTRICT COURT:

Now Comes CITY OF EL PASO, TEXAS ("City"), and files this Motion to Dismiss, pursuant to FED. R. CIV. P. 12(c). Additionally, the City re-urges aspects of its Motion for Summary Judgment [previously filed Dkt. 90] pursuant to FED. R. CIV. P. 56. The decision of the Fifth Circuit Court of appeals in *Edwards v. City of Balch Springs,* No. 22-10269, ___F.4th_____, 2023 WL 3916280 (5th Cir. June 9, 2023) has changed or clarified the law of *Monell* liability of a City, specifically concerning formal city policies which are attacked on the basis that they allow subjective decision making and officer discretion. The City would respectfully show the Court that *Edwards* changes in the law and supports the City's Motions to:

    a.    Dismiss the portions of the Complaint which raise or assert the unconstitutionality of the City's Use of Force Policy, (including Dkt. 1 ¶¶ 19-22 and any other such allegations therein); or in the alternative,

2

    b.    Revisit its prior rulings as to the Use of Force policy in Dkt. 154, where the Court specifically ruled upon the facial unconstitutionality of the Use of Force Policy based on the Situational Force Model [Dkt. 90, Attachment A-2, .pdf pp. 60-70]. This Court should now grant partial summary judgment eliminating that claim from the case, prior to the selection of the jury and the presentation of evidence.

## I.
### IMPACT OF THIS CHANGE IN THE LAW

1.    The Opinion in *Edwards* addresses the precise issue presented and makes key, elemental holdings that should compel this Court to grant the relief sought.

> The Supreme Court has held that "recovery from a municipality is limited to acts that are, properly speaking, acts of the municipality—that is, acts which the municipality has *officially sanctioned or ordered.*"[19] And that Court has indicated that a policy is not facially unconstitutional just because it commits some decisions to an officer's discretion, for "[i]f the mere exercise of discretion ... could give rise to a constitutional violation, the result would be indistinguishable from *respondeat superior* liability."

*Edwards,* 2023 WL 3916280, at *3.

2.    The City of Balch Springs argued from other circuits, "that a written policy cannot be facially unconstitutional solely due to instructions that it leaves out." The Fifth Circuit panel continued:

> We agree. An official, written policy is "itself" unconstitutional only if it affirmatively allows or compels unconstitutional conduct. But where such an official, written policy merely commits some decisions to an individual officer's on-the-scene discretion, or gives some detailed instructions while omitting others, then that policy satisfies *Monell's* moving-force element only if those features stem from the policymaker's deliberate indifference.

*Edwards,* 2023 WL 3916280 *3

3.    The decision in *Edwards* directly applies to the Plaintiffs' *Monell* claims against the City contending that its policy violates federal law.

> Edwards argues that the City's use-of-force policy is facially unconstitutional as a matter of law. He also argues that factual questions remain regarding an alleged policy under which the City failed to train, supervise, or discipline its officers. We disagree on both fronts.

3

> If an official policy "'itself violates federal law, or directs an employee to do so,'" then the policy is facially unconstitutional, and "it necessarily follows ... that a constitutional violation will most likely occur." When that happens, the facially unconstitutional policy's mere existence satisfies the moving-force requirement that is *Monell's* third element. On the other hand, a "facially innocuous policy will support liability" only if "it was promulgated with deliberate indifference to the known or obvious consequences that constitutional violations would result." However, we know of no cases from this circuit explaining how to determine whether a formal, written policy "itself violates federal law" such that it is "unconstitutional on its face" rather than "facially innocuous" under *Monell*'s moving-force element. Indeed, a district court recently remarked that it was not "aware" of a "guide for analyzing a city's written policy" or of any "caselaw that provides a roadmap for such analysis."

*Edwards,* 2023 WL 3916280 *2

4.  Plaintiffs do not allege that the City policy affirmatively allows or compels unconstitutional acts, as required by *Edwards*. [Dkt. 1 ¶¶ 19-22]. This is the foundation of Defendant City's 12(c) Motion for judgment on the pleadings.

5.  Plaintiffs' evidence and arguments in response to Defendant City's Motion for Summary Judgment rely upon the very defects in a Use of Force policy that the Court rejected in *Edwards*. Plaintiffs do not show that the policy is unconstitutional, and their evidence fails to show any prior report or notice that the policy was defective. This is the foundation of the City's renewal of its prior Motion, now asserted for partial summary judgment as to the written policy component of the Plaintiffs' case.

## II.
## Procedural Standards

6.  In a Rule 12(c) motion for judgment on the pleadings, a party may raise defenses to a legal defense to a claim may be raised, and the Rule 12(c) motion must be analyzed under the same standard as the corresponding 12(b) motion to dismiss would have been. 5C C. Wright & A. Miller, FEDERAL PRACTICE & PROCEDURE § 1367 (3d ed. 2004); *see also* FED. R. CIV. P. 12(h)(2).

**A.   Plaintiffs' Complaint**

7.  Plaintiffs alleged in their Complaint:

4

> Escajeda tased Daniel when the use of a taser was not necessary nor justified. Daniel posed no threat to Escajeda or anyone else and did not have a weapon. He was in the process of hanging himself when Escajeda discharged the taser. The officer had no reasonable basis to seize Daniel. Moreover, Escajeda tased Daniel when intermediate force was not authorized under EPPD policy. EPPD policy provides that the use of a taser is a "Level 4" use of force only authorized to control active aggression or defensive resistance when other lesser means have failed or where the officer reasonably believes lesser means would be clearly ineffective. Daniel was not engaged in active aggression or defensive resistance. Escajeda used a taser when its use was not objectively reasonable to defend himself, defend others, or overcome resistance. Defendant Escajeda had no reason to believe that the use of a taser was authorized or that lesser means would be clearly ineffective. The use of the taser was objectively unreasonable and grossly excessive. No reasonable officer would believe that what Escajeda did was right.

[Dkt. 1 ¶ 19].

8.  This allegation actually implies that the policy was legally adequate, but that Escajeda violated the policy. Read in this manner, it supports judgment on the pleadings as to the policy itself. Nevertheless, This factual allegation is not correct statement of the law after the earlier decision of the Fifth Circuit in Officer Escajeda's qualified immunity appeal, where the Court distinguished the facts relied upon by this Court to deny qualified immunity with someone in custody, restrained, or otherwise not resisting:

> It is quite another to ask whether an officer may tase someone who may be hanging himself, who may or may not have a weapon, who does not respond to the officer's commands—all when the officer approaches him rapidly, alone, and in the dark.

*Ramirez v. Escajeda*, 44 F.4th 287, 294 (5th Cir. 2022).

9.  That different formulation of the legitimate considerations that can constitute "objectively reasonable" use of force requires this Court to re-visit its prior application of the issues raised by the policy, even if the qualified immunity decision in *Escajeda* is not applicable to the *Monell* theory here.

10. As a result, the allegations in the Complaint are legally insufficient under *Edwards* and should be dismissed from the case.

**B.     Plaintiffs' Evidence and Arguments in Response to the City's Motion for Summary Judgment**

11.     The Court previously denied the City's Motion for Summary Judgment, and held that the jury would decide if the policy was unconstitutional.   However, the *Edwards* opinion makes it clear that the standard for pleading requires "An official, written policy is "itself" unconstitutional only if it affirmatively allows or compels unconstitutional conduct." *Edwards,* 2023 WL 3916280 *3. Plaintiff's Complaint does not allege this and it is not alleged or supported by the evidence.

12.     Essentially revising their pleaded Complaint, Plaintiffs argued in their Response to the City of El Paso's Motion for Summary Judgment:

> Rather than setting forth the objectively reasonable standard, the City had in place a use of force policy that describes a "Situational Force Model." The policy states that this model directs the officer to "rely upon objective reasoned discretion to make the selection" of the amount of force used. "Objective reasoned discretion" is not defined within the policy and blends "discretion" – a subjective factor – into an objective analysis. This language authorizes an officer to use force without an objectively reasonable basis for doing so – precisely what Escajeda did when he deployed his taser against Ramirez. This language makes the policy facially unconstitutional. *Graham*, 490 U.S. at 397. . . .
>
> Here, the policy extends over several pages and includes a general reference to requiring that force be "reasonable" mentioning the *Graham* factors. However, the provision describing the "Situational Force Model" undermines this language and authorizes uses of force that may not be objectively reasonable.

[Dkt. 115, p. 10].

13.     After pointing out how the later 2017 policy solved this alleged defect, they continued:

> Causation "is straightforward" when an unconstitutional policy itself caused the harm in question. *Jauch*, 874 F.3d at 435-36 (citing *Bd. of Cnty. Commr's of Bryan Cnty*, 520 U.S. at 404). Unlike a custom or practice claim where plaintiffs must show a persistent widespread practice so common and well-settled as to constitute a policy, Plaintiffs have established that the "Situational Force Model" language in the use of force policy itself authorizes unconstitutional conduct. Since the policy is not facially lawful, Plaintiffs are not required to show that Chief Allen was deliberately indifferent to the obvious consequences of the policy authorizing force against subjects when officers have less than an objectively reasonable basis for doing so.

[Dkt. 115, p. 11].

14.     The allegations and arguments are directly contrary to the essential holding in *Edwards*. There, the Court notes that:

> Edwards argues that this policy is unconstitutional because it allows an officer to rely on "subjective criteria," "subjective beliefs," and "subjective evaluations."

*Edwards,* 2023 WL 3916280 *5.  After reviewing extensively the Balch Springs policy, which has many similarities to the EPPD Policy at issue here, [Dkt. 154, pp. 37-41] the Court concluded:

> Because the policy does not affirmatively allow or compel an officer to use deadly force based solely on the officer's own "underlying intent or motivation," Edwards's argument from subjectivity fails.

*Edwards,* 2023 WL 3916280 *6.

15.     On August 20, 2021, this Court denied the City's Motion for Summary Judgment holding that:

> After reviewing the record in the light most favorable to Plaintiffs, the Court concludes that there is a genuine dispute of fact as to whether the City's use-of-force policy was the "moving force" behind Ramirez's death.  First, it is undisputed that the City's use-of-force policy at the time of Ramirez's death described a "Situational Force Model" that directed officers to "rely upon objective reasoned discretion to the make the selection" of the amount of force used.

[Dkt. 154, p. 39].

16.     In evaluating the arguments about subjective decisions under this policy, this Court did not conclude that the policy specifically **allowed or compelled** conduct that was unconstitutional, the standard applied in *Edwards*. [Dkt. 154, pp. 37-41].   In light of the earlier opinion in *Escajeda*, clearly showing that the objective factors present and known to Officer Escajeda could be sufficient for "reasonable force," this Court should re-evaluate that ruling. The City contends that the policy is not facially unconstitutional, and that this issue should be dismissed from the case going to the jury.

17.     This argument is further supported by this Court's prior use of the analysis from Plaintiffs' expert, concluding that the policy allows subjective judgment, permits discretion, and it ambiguous. [Dkt. 154, pp. 40-41].  First, Plaintiffs provide the expert testimony of law enforcement expert Michael Leonesio, who reviewed the policy and opined that the "objective reasoned discretion" language is

ambiguous and confusing because it does not provide clear guidance to officers on how to use force in an objectively reasonable manner under *Graham*. Mr. Leonesio explains that this language blends in objective and subjective elements, and as the EPPD manual does not provide a definition for it, that leaves police officers with a lot of ambiguity. [Dkt. 154, p. 40].

18. Again, this is not the standard applicable to a facial unconstitutionality claim in *Edwards*, and the City policy in effect at the time did not authorize or compel unconstitutional conduct.

19. Plaintiff's Complaint, responses to the City's Motion for Summary Judgment, and Plaintiff's experts claim that the lack of active resistance, and Officer Escajeda's inability articulate a specific weapon-based fear are fatal. The opinion in *Escajeda* says that is wrong:

> Contrary to the plaintiffs' arguments, Escajeda did not have Daniel "subdued" and under his control when he used the taser. To the contrary, Escajeda faced a "tense, uncertain, and rapidly evolving" situation, *Plumhoff*, 572 U.S. at 774, 134 S.Ct. 2012, wholly unlike those faced by the officers in *Bush, Newman*, and *Martinez.*
>
> Escajeda used the taser precisely because Daniel was *not* in custody and Escajeda was unsure whether the strange scenario he faced posed a threat to his safety.
>
> The court asked about the proper use of tasers "against a subdued person." That is too general. It is one thing to ask whether police may tase someone after they have handcuffed him and put him face-down on the ground. *Cf. Martinez*, 716 F.3d at 372. It is quite another to ask whether an officer may tase someone who may be hanging himself, who may or may not have a weapon, who does not respond to the officer's commands—all when the officer approaches him rapidly, alone, and in the dark.
>
> "These multiple factual distinctions matter." *Betts*, 22 F.4th at 586. Even viewing the facts most favorably to the plaintiffs, as we must, the unusual setting separates this case from routine pat-downs and arrests gone wrong where officers pointlessly or sadistically use force. Existing precedent did not put the lawfulness of Escajeda's actions "beyond debate," *al-Kidd*, 563 U.S. at 741, 131 S.Ct. 2074, and so his use of a taser under these unique circumstances did not violate clearly established law.

*Ramirez v. Escajeda,* 44 F.4th 287, 294 (5th Cir. 2022).

20. This Court's ruling in Dkt. 154 also discusses and relies upon the "immediacy" of the threat argument, [Dkt. 154, pp. 26-30] and the City's policy does not specifically require this. *Edwards* dealt

8

with the same issue and found the policy did not authorize or compel an unconstitutional act because of the alleged ambiguity about "immediacy."

> Edwards argues that the City's policy is facially unconstitutional because it contains "no *immediacy* requirement necessary to justify an officer's use of deadly force" and because it calls "for an officer to use the officer's own *subjective beliefs* in determining whether deadly force was justified." Neither argument succeeds

*Edwards,* 2023 WL 3916280 *3

> The court further noted, that, "On the contrary, a written policy is not facially unconstitutional just because it leaves out "detailed guidance that might have averted a constitutional violation," and continued, "…the policy's general use-of-deadly-force authorization does not affirmatively allow or compel officers to use deadly force even when immediacy is lacking."

*Edwards,* 2023 WL 3916280 *4

21. Other than the seven incidents reviewed by the Court in its ruling, Plaintiffs do not cite any prior incidents involving a taser at all. [Dkt. 115, pp. 18-21]. None of the Plaintiffs' alleged prior incidents involve the use of a taser on a person who was not responsive and offered no resistance.

22. Although Plaintiffs have produced evidence concerning the City's mental health policy, and the failure to implement a CIT program at an earlier point in time, Plaintiffs have produced no evidence that City policymakers were aware of or notified of any alleged efficiencies in their Use of Force policy.  In other words, Plaintiffs have not shown that anyone told the City that it needed a different or better Use of Force policy before this incident.

### III.
### CONCLUSION.

For the foregoing reasons, the Court should dismiss on the pleadings each and every aspect of this claim based on the facially defective Use of Force Policy, and alternatively should modify its prior ruling on Summary Judgment, holding that no fact question exists for the jury to determine with respect to the constitutionality of the policy, or for any conscious and deliberate indifference to misconduct related to it.  Defendant City asks the Court to eliminate that claim from the matters,

evidence, and instructions before the Jury.

                        Respectfully submitted,

                        DENTON NAVARRO ROCHA BERNAL & ZECH
                        A Professional Corporation
                        2517 N. Main Avenue
                        San Antonio, Texas 78212
                        210/227-3243
                        210/225-4481 Fax
                        lfdenton@rampagelaw.com
                        rldrinkard@rampagelaw.com
                        smtschirhart@rampagelaw.com
                        pbernal@rampagelaw.com

By:       */s/ Lowell F. Denton*
            LOWELL F. DENTON
            State Bar No. 05764700
            ROBERT L. DRINKARD
            State Bar No. 24007128
            SCOTT M. TSCHIRHART
            State Bar No. 24013655
            PATRICK C. BERNAL
            State Bar No. 02208750

            ASSISTANT CITY ATTORNEY
            MATTHEW G. MARQUEZ
            State Bar No. 24116720
            MarquezMG@elpasotexas.gov
            300 N. Campbell
            El Paso, Texas 79901
            (915) 212-0033
            (915) 212-0034 (Fax)

            *Attorneys for Defendant*
            *The City of El Paso, Texas*

## **CERTIFICATE OF SERVICE**

      I, the undersigned, do hereby certify and attest that on this 19th day of June 2023 all parties in interest listed below have received a true and correct copy of the foregoing as indicated or by **electronic mail from the Clerk of the Court.**

| | |
|---|---|
| Lynn Coyle<br>Christopher Benoit<br>THE LAW OFFICE OF LYNN COYLE, PLLC<br>2515 North Stanton Street<br>El Paso, Texas 79902 | **E-NOTIFICATION** |
| Ray Velarde<br>1216 Montana Ave.<br>El Paso, Texas 79902 | **E-NOTIFICATION** |

                                           */s/ Lowell F. Denton*
                                           LOWELL F. DENTON

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **MARIA RAMIREZ and PEDRO RAMIREZ, as Representatives of the Estate and Statutory Death Beneficiaries Of DANIEL ANTONIO RAMIREZ** § § § § § | |
| **Plaintiffs,** § § | **CIVIL NO. 3:17-cv-00193-DCG** |
| vs. § § | |
| **RUBEN ESCAJEDA, JR. and CITY OF EL PASO, TEXAS** § § § § | |
| **Defendants** § | |

## ORDER ON DEFENDANT CITY OF EL PASO'S DEFENDANT CITY OF EL PASO'S 12(c) MOTION TO DISMISS AND RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT

On this day, the Court considered Defendant City of El Paso's (City) 12(c) Motion to Dismiss and Renewed Motion for Partial Summary Judgment. After considering the Motion, the Court finds that the City's Motion should be GRANTED.

IT IS ORDERED, ADJUDGED and DECREED that Defendant, CITY OF EL PASO, TEXAS' Rule 12(c) Motion to Dismiss and Renewed Motion for Partial Summary Judgment is hereby GRANTED and Plaintiffs' claims based on the constitutionality of the City's Use of Force Policy, abrogating the portions of this Court's prior Order in Dkt. 154, and same are DISMISSED.

SIGNED THIS _____ day of June 2023.

DAVID C. GUADERRAMA
UNITED STATES DISTRICT JUDGE

**PREPARED BY:**

DENTON NAVARRO ROCHA BERNAL & ZECH
A Professional Corporation
2517 N. Main Avenue
San Antonio, Texas 78212
210/227-3243
210/225-4481 Fax
lfdenton@rampagelaw.com
rldrinkard@rampagelaw.com
smtschirhart@rampagelaw.com
pbernal@rampagelaw.com


By:     */s/ Lowell F. Denton*
        LOWELL F. DENTON
        State Bar No. 05764700
        ROBERT L. DRINKARD
        State Bar No. 24007128
        SCOTT M. TSCHIRHART
        State Bar No. 24013655
        PATRICK C. BERNAL
        State Bar No. 02208750

        ASSISTANT CITY ATTORNEY
        MICHAEL K. LASLEY
        State Bar No. 11966950
        LasleyMK@elpasotexas.gov
        300 N. Campbell
        El Paso, Texas 79901
        (915) 212-0033
        (915) 212-0034 (Fax)

        *Attorneys for Defendant*
        *City of El Paso, Texas*